## SUCCESSION OF ASBRIDGE.

A judgment has no force or effect until signed by the judge. Consequently where a judgment, homologating an account presented by the curator of a succession and allowing certain sums to attorneys and appraisers, was rendered before the adoption of the constitution of 1845, which prohibits such allowances (art. 71), but was signed afterwards, it must be reversed. The constitution of 1845 having gone into effect before the judgment was signed, the judge had ceased to have any authority to make such allowances.

Since the adoption of the constitution of 1845, no court or judge can make any allowance to an attorney employed by a curator, or to an attorney of absent heirs, or for the compensation of persons employed to appraise the property left by the deceased. Const. art. 71.

APPEALS from the Court of Probates of New Orleans, *Bermudez*, J. The judgment of the court was pronounced by

SLIDELL, J. This case presents two appeals, the one by a creditor, *Bartlette*, the other by the heirs of the deceased. Both appeals are from portions of a judgment rendered on a tableau.

*Bartlette* claimed for professional services rendered to the deceased himself, in judicial proceedings to which the deceased was a party. The judge of the court below reduced his charge. The question of *quantum meruit* was presented to the court below on conflicting evidence. It was a question of fact, and we see no error in the judgment of the court below.

As to three of these items, to wit, $250 to *Van Dalson*, attorney at law, for <span>Succession of</span> alleged professional services rendered to the curator, $125 to *R. H. Grandment*, <span>Asbridge.</span> as attorney of absent heirs, and $16 to the appraisers, the heirs contend that so much of the judgment as made these allowances was contrary to the 71st article of the constitution, and should be avoided. The judgment was rendered in September, 1845, before the constitution went into effect, and was signed the 20th December, being after the constitution went into effect.

A novel question is here presented. It has been a subject of careful and prolonged deliberation, and it has not been without difficulty that we have formed a conclusion.

Under our practice the signature of the judge is necessary, to make a judgment which he has rendered final and conclusive. At any time, till it is signed, either party may, by motion for a new trial, ask its revision, and the court, if it considers the judgment contrary to law or the evidence, may set it aside and grant a new trial. Even if the judgment be, in the opinion of the judge conformable to the law and the evidence, yet, in case of newly discovered evidence, under proper affidavit, the party dissatisfied may obtain the same relief. Nor does the law confine the authority of the judge over the judgment rendered, to cases where a party litigant asks its revision. The judge may even, *ex officio*, order a new trial, if he be himself dissatisfied with his decree. Hence it has been the uniform and settled jurisprudence of the Supreme Court, from its foundation down to the present time, that, until it be signed, the judgment is without efficacy ; it is inchoate and imperfect.

In *Sprigg* v. *Wells*, 5 Mart. N. S. 105, the inquiry arose upon the interpretation of the then existing law relative to the recording of judgments. To give such recording the effect of a mortgage, from the date of the judgment, it was required that it should be made within ten days from the time at which such judgment was rendered. It there appeared that the judgment was recorded on the same day that it was signed, but more than ten days had elapsed since its rendition. Judge Matthews said : "The law requires the judges of the inferior courts of this State, to sign their judgments within three days after they have been pronounced or rendered. The signature of the judge, according to this regulation, is *essential to the perfection of a judgment;* and, although it should not receive such signature until after three days, it does not acquire the force of a judgment until completed and perfected by the name of the judge thereto subscribed."

In *Williams* v. *Holloway*, 11 La. 515, the court, through Judge Martin, declared that a judgment under which title by judicial sale was claimed, but which did not appear to have been signed by the judge, was inadmissible as evidence.

In the case of *The State* v. *McDonald*, 17 La. 485, an injunction was sustained against an execution, because the judgment upon which it issued had not been signed, although the minutes of the court, at the close of the term, seem to have been signed. See also, Mart. N. S. 241.

So an appeal was dismissed, when the judgment appealed from had not received the judges signature. 7 La. 513.

In 12 Martin, 252, the signing of the judgment is also spoken of as giving *effect* to the judgment; but it was held that it may be signed, even many days after the expiration of the three days from rendition. The law then was that the judge shall sign three days after rendition, being in terms more stringent than our Code, which only says that "he shall not do so, until three judicial days have expired."

SUCCESSION OF    We incline to the opinion that, the signing of a judgment, as prescribed by
ASBRIDGE.    our Code of Practice, is not a mere ministerial act. We believe that the delay
prescribed between the rendition and the signing of a judgment, was prescribed
in order to give the mind of the judge time and leisure for reflection; that, if
erroneous, he might order its revision by a new trial on the application of the
litigants, or even *proprio motu;* and that the signing of the judgment is the so-
lemn exercise and memorial of his judicial will and conviction, that the judgment
requires and shall undergo no change.

There is a case reported in 8 Peters 302, coming up from the eastern district
of Louisiana, in which the Supreme Court of the United States held that, the
signing of a judgment is a ministerial and not a judicial act. But it will be ob-
served that there the court seemed to recognize the authority of the district
judge to grant a new trial, after the lapse of a longer time than three days, and
they observe : "The district judge, in not 'granting a new trial, *has decided*
against it. It is immaterial what reasons may have influenced this *decision,* as
it was a matter which rested in his discretion. But the important inquiry is
*whether, after refusing to grant a new trial,* either on a full consideration of the
merits, or because he had not a sufficient knowledge of them, he was not bound
to sign the judgment."

The question, however, whether the signing of the judgment, under the cir-
cumstances of the present case, was a judicial or a ministerial act, is not one
which it is indispensable to solve. It was, at any rate, an act of the judge,
which was indispensable to give *force and effect* to the judgment rendered. It
was an exercise of his official power.

This ascertained, the solution of the present question naturally follows:

"No court or judge, shall make any allowance, by way of fee or compensation,
in any suit or proceeding, except for the payment of such fees to ministerial of-
ficers as may be established by law." Constitution, art. 71.

This unequivocal provision of the supreme law of the State, having gone into
effect before the day when the judgment was signed, had swept from every.
court of this State all authority over the subject matter of such *allowances,*
except as therein excepted. The judicial officer was rendered powerless for
such purpose ; and that which had not, when the constitution went into effect,
the force and effect of a judgment, became a mere abortion, by the complete
withdrawal of official authority, and the positive inhibition of the judge's action.

We apply here, in another form, the same principle which we enforced in
the case of *Pandelly* v. *His Creditors, ante* p. 21. The judgment there had
been rendered, and signed by the district judge, before the constitution went in-
to effect. We said we were without authority either to reverse or affirm the
decree, and therefore dismissed the appeal.

Here the probate judge has performed an act as judge unconstitutionally.
The appellant invokes the constitution, and it is our imperative duty to cancel
what the judge has done. This duty extends to the appraisers' fees, as well
as the two other allowances, because it is the allowance of a fee to a ministerial
officer not established by law.

Whether the attornies have a right to sue the heirs, who have been recently
decreed to be put into possession, is a question not before us on this appeal.

Some other items of the account have been discussed in argument by the
counsel for the heirs, but they are not regularly before us. The order of ap-
peal was upon five items only, which are specially enumerated. They are the
items already considered.

It is therefore decreed that, so much of the judgment of the court below as was appealed from by the said *T. A. Bartlette*, be affirmed, the said *Bartlette* paying one half the costs of appeal. And it is further decreed that, as to so much of the judgment as was appealed from by the said heirs of *Asbridge*, the same be affirmed, as to the items of $50 to *McPherson*, and $87 95 to *Hennen :* and that as to the items of $250 to *Van Dalson*, $125 to *Grandmont*, and $16 to *Allard & Charbonnet*, the said judgment be reversed, and said claims stricken from the tableau. One half of the costs of appeal to be paid out of the funds of the said estate. And it is further decreed that the said tableau as now amended, be finally approved.

*Bartlette*, one of the appellants, *pro se*. *Greiner*, for the heirs, also appellants. *Van Dalson*, *Carter*, and *Duvigneaud*, contrâ.