Cassard vs. Tracy; Cassard vs. Zacharie (Consolidated).

## No. 13,240.

E. A. CASSARD vs. WM. E. TRACY; E. A. CASSARD vs. F. C. ZACHARIE
(CONSOLIDATED).

| | |
|---|---|
| 52 | 835 |
| 104 | 648 |
| 52 | 835 |
| 109 | 814 |
| 52 | 835 |
| 153 | 537 |

### SYLLABUS.

1. Laws, whether constitutional or statutory, should be construed to operate prospectively only, unless the words employed show a clear intention that they should have a retrospective effect.
2. Legal enactments regulating procedure are generally applicable to pending cases, and may, not unfrequently, operate retrospectively; but, the line must be drawn in any case in which, under the form of modifying the remedy, or regulating the procedure, substantial rights, legally acquired, are impaired, or divested.
3. Judgments of trial courts, by the law of this State, when once rendered, and made final, as far as they can be so made by the action of such courts, become the property of those in whose favor they are given.
4. The provisions of the Constitution of 1898 establishing, and conferring jurisdiction upon the courts of appeal, upon questions of fact as well as upon questions of law, in certain cases, were not intended to operate retrospectively so as to set aside, or require said courts to set aside judgments previously rendered, and which become the property of those in whose favor they were given.

### ON REHEARING.

1. The moment the Constitution of 1898 went into effect appeals then pending in the Court of Appeals became entitled to consideration, not from the point of view of the jurisdiction conferred upon the court by the Constitution of 1879, but from the point of view of the jurisdiction conferred upon the court by the Constitution of 1898.
2. Under the Constitution of 1879 appeals to the Court of Appeals for the Parish of Orleans in cases involving less than five hundred dollars were upon questions of law alone; under the Constitution of 1898 the court has jurisdiction in all cases both of the law and the facts.
3. Where an appeal in a case for less than $500 was pending in the Court of Appeals for the Parish of Orleans when the Constitution of 1898 went into effect. but the evidence upon which it was tried in the District Court had not been taken down in writing, and no statement of facts could be agreed upon, it became the duty of the Court of Appeals to remand the case in order that on a second trial the testimony might be reduced to writing and, thus, in case of a second appeal, the court would be in a position to discharge its constitutional duty of adjudging the facts as well as the law of the case.

IN RE. Wm. E. Tracy and F. C. Zacharie applying for *certiorari* or writ of review to the Court of Appeal, Parish of Orleans, State of Louisiana.

Cassard vs. Tracy; Cassard vs. Zacharie (Consolidated).

*Francis C. Zacharie* for Relator.

*Albert Voorhies* for Respondents.

The opinion of the court was delivered by MONROE, J.
On rehearing by BLANCHARD, J.

## STATEMENT OF THE CASE.

MONROE, J.   It appears from the record that E. A. Cassard brought suits against relators, upon paving contracts, for sums exceeding $100, but not exceeding, in the aggregate, $500; that the suits were consolidated, by consent, and tried together in Division "D," of the Civil District Court, before the adoption of the present Constitution, and that there was judgment against Tracey for $56, and against Zacharie for $155.   Under the Constitution then in force the cases were appealable upon questions of law alone, which were required to be taken up by means of bills of exception, or assignments of error, accompanied by statements of fact, agreed on, or prepared by the trial judge.   The defendants, however (relators here), reserved no bills of exception; nor did they agree upon, or obtain from the trial judge, any statements of fact.   When the judgment was rendered against them, they moved for a new trial, but alleged no other grounds than that the judgment was contrary to law and the evidence and that they were aggrieved thereby; and the new trial was refused.   A suspensive appeal was then taken, and after lodging the record in the appellate court, an assignment of error was filed, setting forth that the judge *a quo* had given judgment on *quantum meruit,* when, as appellants alleged, he ought either to have given judgment on the contracts sued on, or else have rejected plaintiff's demands.   The cases were fixed for trial May 30th, 1898, eighteen days after the new Constitution went into effect; and, upon that day, appellants filed a motion to remand them to the trial court, for reasons, the substance of which will appear from the following excerpts from the opinion of the Court of Appeal, to-wit:

"A motion to remand is made on two grounds:

"1st.—That there is no evidence in the record, the testimony in the "lower court not having been taken down in writing; and that there "is no statement of facts in the record, for the reason that opposing "counsel could not agree upon the same, and the trial judge declined

"to make the same, although applied to therefor, for the reason, "assigned by his Honor, that he could not recall to memory the facts "testified to.

"It is sufficient answer to this to say that the record does not dis- "close that any application was ever made, to court or counsel, for a "statement of facts, and that we may not, properly, look beyond the "record. We may add, however, that the proper course would have "been to invoke, at the time, supervision of the action of the district "judge, by writs in aid of our appellate jurisdiction.

"2nd.—That, under the new Constitution, the right is vested in "defendants and appellants to have a trial, hearing and judgment on "this appeal, and in this cause, both on the merits of the law and the "facts.

"We have repeatedly ruled adversely to that contention, and our "ruling has been sustained by the Supreme Court on a writ of review "in the case of Rosetta Gravel, Paving and Improvement Co. vs. "Mary Louise Kennedy, recently decided. * * * Motion denied."

The court then proceeded to decide the cases upon their merits, and affirmed the judgment appealed from. An application for rehearing was made and refused, and the appellants then made, to this court, the application, which we are now considering, for the review of the judgment of the Court of Appeal upon the motion to remand; and, in support of said application, they urge that the provisions of the present Constitution, conferring jurisdiction on said court, apply to their cases and entitle them to a hearing, etc., on the facts, and that, in order to obtain the same, it is necessary that said cases be remanded to, and retried in, the lower court.

### OPINION.

The relators proposition is, in effect, that the provisions of the present Constitution, which became operative May 12th, 1898, shall be so construed as to deprive Cassard, and relieve them, of the judgment which had been rendered by the District Court against them on March 22nd, 1898.

The question which first suggests itself is; whether the constitutional provisions invoked by relators are properly susceptible of the construction suggested? It is plain that the effect of this construction will be to give to those provisions a retroactive operation, and to

undo something which had been, lawfully, done before they were brought into existence. The judgment obtained by Cassard, in the District Court, had been so obtained agreeably to the then existing law, constitutional and statutory. At that time, and under that law, he might have been deprived of it, by the action of the appellate court exercising the legal discretion vested.in it; by an adverse judgment in an action to annul, founded upon pre-existing causes, specified by law, or by allowing said judgment to become prescribed. These conditions were as though written into the title by which he acquired, but they were the only conditions by which it was affected. Otherwise, and by the textual provisions of our law, the judgment was his property by an indefeasible title. Our Code of Practice, Article 548, reads: "A judgment, when once rendered, becomes the property of " him in whose favor it has been given, and the judge can not alter the " same except in the mode provided by law."

After the judgment was signed, the judge, by whom it was rendered, was powerless to alter it, save through an action of nullity and for pre-existing, specified, causes. When the appeal was perfected, he was ousted of jurisdiction except for certain limited purposes: and jurisdiction of the case was vested in the appellate court. In the exercise of that jurisdiction it was competent for the appellate court to have amended or reversed it, or if, in the exercise of a sound legal discretion, that court had reached the conclusion that the interests of justice would be best subserved thereby, it might have set the judgment aside and have remanded the case to be tried *de novo.* But no authority was vested in any other department of the government either to set the judgment aside or to control the discretion vested in the appellate court in the premises, or in any manner, without due process of law, to deprive Cassard of his property.

If the convention which, after his acquisition of said judgment, adopted the present Constitution, could, by conferring jurisdiction upon a court created by it, impose upon such court the obligation to annul or destroy said judgment, it would seem to follow that it might have annulled or destroyed it by direct action, or by a general provision couched in some such language as the following, to-wit; "All judgments heretofore rendered by any of the courts of this State, and which are pending on, or subject to, appeal are hereby annulled and set aside and the causes in which they were rendered shall be tried *de novo.*" And, if it was competent to have annulled such judgments

in order that the causes should be tried again in another way, it is difficult to perceive why, as a question of principle, they might not have been thus annulled for any other reason, or for no reason at all; the answer to all objections being that such action would merely affect the remedy. Nor would the situation, so far as the present cases are concerned, be, in any wise, altered, if the defendants had taken a devolutive appeal, twelve months, less a day, after the rendition of the judgment, instead of a suspensive appeal; or had taken no appeal at all, for, if the argument relied on be sound, it would, in either event, be the duty of the trial, or appellate, court, as the case might be, to set aside the judgment in order to meet the new conditions.

It is evident that such retroactive operation is likely to work injustice and hardship. Those who had gained their causes before the enactments in question went into effect were subjected to the usual trouble, delay and expense of one trial; and the setting aside of their judgments, in order to meet conditions subsequently created, will subject them to further trouble, further delay, and further expense, and will give their opponents, who have lost, an unfair advantage, since the latter may demand new trials when they find it to their interest, for purposes of delay or otherwise, to do so, whilst those who have already gained their cases, can have nothing better to hope for, and may lose upon a second trial, by reason of the failure of their witnesses or other untoward circumstances, all that they had gained upon the first. In addition to which, if the cases are, like the present, on appeal, the unfortunate appellees may be made liable for the costs of appeal, though the judgments appealed from were correct when rendered.

It is in view of consequences such as these that all writers upon the construction of law concur in the opinion that, whether constitutional or statutory, it should be construed to operate prospectively *only*, unless such construction is absolutely precluded by the language used. Judge Cooley says:

"We shall venture also to express the opinion that a Constitution " should operate prospectively only, unless the words employed show a " clear intention that it should have a retrospective effect. This is " the rule in regard to statutes, and it is one of such obvious conven- " ience and justice that it must always be adhered to in the construc- " tion of statutes, unless there be something on the face of the enact-

"ment putting it beyond doubt that the Legislature meant it to oper-
"ate retrospectively. Retrospective legislation, except when designed
"to cure formal defects, or otherwise operate remedially, is com-
"monly objectionable in principle and apt to result in injustice, and
"it is a sound rule of construction which refuses, lightly, to imply an
"intent to enact it. And we are aware of no reasons applicable to
"ordinary legislation which do not, upon this point, apply equally
"well to Constitutions."

Cooley on Constitutional Limitations, 62.

Mr. Sedwick repeats, again and again, that "the judiciary will give
all laws a prospective operation *only,* unless their language is so clear
as not to be susceptible of any other construction." Sedwick on the
Construction of Constitutional and Statutory Law, 172. Mr. Black,
in a recent work, says: "A constitutional provision should not be
"construed with a retrospective operation, unless that is the unmis-
"takable intention of the words used, or the obvious design of the
"authors." Black on Interpretation of Law, 20.

From Mr. Sutherland we take the following:

"*Retrospective Law.*—Such statutes, when not forbidden by the
"Constitution, may be valid, but there is always a strong leaning
"against giving them a retrospective operation, and this proceeds
"from the presumption that the Legislature does not intend what is
"unjust. 'Those whose duty it is,' says Erle, J., 'to administer the
"law, very properly guard against giving to an act of parliament a
"retrospective operation, unless the intention of the Legislature, that
"it should be so construed, is expressed in clear, plain and unam-
"biguous language.' Such laws are looked upon with general dis-
"favor. In Dash vs. Van Kleeck (2 Johns, 506), Kent, J., said 'There
"has not been, perhaps, a distinguished jurist or elementary writer
"within the last two centuries, who has had occasion to take notice of
"retrospective laws, either civil or criminal, but has mentioned them
"with caution, distrust or disapprobation."

Sutherland on Statutory Construction, 406.

"If, before a final decision, a new law as to procedure is enacted and
"goes into effect, it must, from that time, govern and regulate the
"proceedings. But the steps already taken, the status of the case, as
"to the court in which it was commenced, the pleadings put in, and
"all things done under the late law, will stand, unless an intention to
"the contrary is plainly manifested; and pending cases are only

"affected by general words as to future proceedings from the point "reached when the new law intervened."

*Ib.*, 482 (citing authorities).

It must be presumed that the members of the convention which adopted the Constitution of 1898 were familiar with these commonly accepted canons of construction, and that when they intended any particular provision, incorporated in that instrument, to operate retrospectively they formulated it in such language as to leave no room for doubt. Coming, then, to the provisions which are here invoked, it may be remarked that, under the late Constitution, there was a Court of Appeals for the Parish of Orleans which had appellate jurisdiction, on questions of law alone, in cases where the amount in dispute, or fund to be distributed, exceeded $100, and was less than $500, and upon both law and facts where the amount in dispute, or fund to be distributed, exceeded $500, and was less than $2,000, and that the change made by the present Constitution (in so far as concerns the matter at issue) was to confer upon the court which was created as the successor of the one mentioned, jurisdiction as to facts, as well as law, in cases where the amount in dispute, or fund, etc., exceeds $100, and is less than $500.

Counsel for relators refer to the following, as the provisions in the new Constitution upon which he relies:

"*Art. 131.*—There shall be a court of appeal to be known and desig- "nated as the 'Court of Appeal for the Parish of Orleans.'

"*Art. 325.*—\* \* \* *Seventh.*—The Supreme Court, Court of "Appeal and District Courts, provided for by this Constitution, are "declared to be, and shall be construed to be, the same courts as those "of the same name created by the Constitution of 1879, and all writs, "orders and process issued from said courts, which shall be pending, "or in course of execution at the date when this Constitution goes "into effect, together with all the records and archives of said courts, "shall at once, and by virtue of this article, be transferred to, and "held to be cases pending in, and writs, orders and process issued "from, and in course of execution under the authority of, and "records and archives of, said courts, respectively, as organized under "this Constitution."

"*Art. 98.*—The Courts of Appeal, except as otherwise provided for "in this Constitution, shall have appellate jurisdiction only, which "shall extend to all cases, civil and probate, when the matter in dis-

" pute, or the funds to be distributed shall exceed one hundred dollars
" exclusive of interest, and shall not exceed two thousand dollars ex-
" clusive of interest."

"*Art. 103.*—All cases on appeal to the Court of Appeal shall be tried
" on the original record, pleadings, and evidence."

It can not be said of the language of these articles, that it so clearly
expresses the intention that they shall operate retrospectively as to be
susceptible of no other construction. Upon the contrary, there is not
an affirmative expression, or a word having an affirmative significa-
tion, which even remotely indicates such intention. That meaning
can be arrived at only by a process of ratiocination; the argument
being, somewhat, as follows: "The cases now under consideration
were pending in the Court of Appeals before the adoption of the
present Constitution; that court had, however, jurisdiction only as to
the law; by the operation of the new Constitution they became cases
pending in the present Court of Appeal, upon which court the obli-
gation is imposed to exercise jurisdiction as to the facts as well as the
law; but the jurisdiction as to the facts can not be exercised in the
present condition of the cases, for the reason that the facts are not
disclosed in the record, hence, the judgment rendered in said cases, by
the District Court, before the adoption of the present Constitution,
must be set aside, and the cases must be remanded and tried *de novo,*
and in such a manner as to enable the Court of Appeal to pass on the
facts." This amounts to saying: "We must give to these provisions
the prospective operation contemplated by their framers, and, in
order to do so, we must give them the retrospective operation for
which the relators contend."

If the relators' cases were the only ones to which the provisions in
question were intended, or could be held, to apply, there would be no
answer to this argument, for, unless they were applied as suggested,
they would be entirely without effect. But the relators' are not the
only cases to be affected.

Construing them to operate prospectively only, the enactments will
affect all cases which, being within the limit as to amount, may here-
after be filed, as long as the Constitution remains unchanged; as also
all cases filed before the adoption of the Constitution, but which were
untried, in the District Court, at that time, and, with respect to such
cases, the law will bear equally and equitably upon all litigants and
will work no hardship. The only other cases to which the new law, by

giving it a retroactive effect, could be made to apply, are those which had been tried and decided, but which had not been appealed, before its adoption; and those which had been tried and decided, and which were pending on appeal. Of this latter class it would be doing no violence to probability to assume that the larger proportion had been taken up on statements of fact agreed on by the opposing counsel, so that we have left, cases pending on appeal on statements of fact prepared by trial judges; cases pending on appeal where no statements of fact had been agreed on or obtained from the trial judges; and cases decided in the District Courts and not appealed when the Constitution was adopted; and to the last two classes, inconsiderable in number, by comparison, and exceptional as to status, the constitutional provision invoked can be applied, only by giving them a retroactive operation which will have the effect of undoing that which has been lawfully done, and of depriving citizens, by mere legislation, of that which our law declares to be property lawfully acquired.

It will be conceded, however, that the intention of the law maker can be properly arrived at only by construing the different provisions of the law together so that no one provision shall be entirely sacrificed in order to give an extreme, or, supposed, full, effect to another. Observing this rule, we find in Article 325 (the "Schedule"), to which relators' counsel has referred us, a paragraph, not mentioned in the reference, which reads as follows:

"*Second*—All writs, actions, causes of action, proceedings, prosecutions and rights of individuals or bodies corporate and of the State, when not inconsistent with this Constitution, shall continue as valid and in full force and effect."

This seems to be a distant manifestation of solicitude for the preservation of existing conditions and existing rights, and a declaration that the Constitution is to operate as little disturbance of those conditions and rights as may be consistent with the enforcement of the instrument, as a whole. The "right of individuals * * * when not inconsistent" with the law, would have remained "valid and in full force and effect," without any affirmative declaration on the subject. The declaration is, therefore, made, *ex industria,* as a rule of construction, applicable to the entire instrument, and, read in connection with the provisions which we have been considering, expresses the intention of the framers of the Constitution in language just the

reverse of that required to entitle those provisions to the retroactive operation claimed for them.

But the case is made still stronger by one of the articles to which we are especially referred by relators' counsel, to-wit:

"*Art 108.*—All cases on appeal to the Court of Appeal shall be tried on the original record, pleadings and evidence."

How can this article be applied in the cases now before us, or in any case which had been tried and decided before its adoption, and the "*original* * * * *evidence*" in which had not been preserved?

The original record or pleadings in such cases may be obtained and used, but the original evidence, delivered orally, and not taken down, belongs to the past, and is beyond recall. The judge *a quo,* we are told by the relators' counsel, is unable to remember it, and the opposing counsel were unable to agree upon it. We have no means of knowing that the witnesses who testified can now be found, and not even those witnesses, themselves, if found, could, with the best intentions, assure us that they would be able, upon a second trial, to give the same testimony as was given by them on the first. The original evidence, applying those words prospectively, from the date of the adoption of the Constitution, no doubt has been, and will be, taken down and preserved, in all cases subject to appeal on the law and the facts, and thereafter tried or to be tried; but, with respect to cases tried before the adoption of 'the Constitution, appealable only on questions of law, the original evidence, delivered orally, and not taken down, is no longer within human reach, and, to construe the articles of the Constitution which confer jurisdiction on the Court of Appeal to mean that such cases shall be tried by that court upon such original evidence, would be to hold that the framers of the Constitution intended to require an impossibility, in order to work an injustice.

There are many irreconcilable decisions upon the general subject of retrospective legislation. Upon one branch of it, *i. e.,* the proper application of the term *ex post facto,* even the convention which framed the Federal Constitution seems, for a while, to have labored under some misapprehension. Mr. Justice Miller, speaking as the organ of the Supreme Court of the United States, makes the following comment:

"As the clause was first adopted the words concerning contracts " were not in it because it was supposed that the phrase *ex post facto* " included laws concerning contracts as well as others. But it was

" ascertained, before the completion of the instrument, that this was a
" phrase which in English jurisprudence, had acquired a signification
" limited to criminal law, and the words 'or any law impairing the ob-
" ligations of contracts' were added to give security to rights resting
" on contracts. 2 Bancroft Hist. of the Constitution, 213."

Kring vs. Missouri, 107 U. S., 221.

Whilst, therefore, an *ex post facto* law is retroactive in the sense
that it operates upon a subject not liable to it at the time the law was
made, the term is uniformly and exclusively applied by the courts to
penal and criminal legislation, and, so applied, is defined to be a law
which, in relation to an offense or its consequences, alters the situa-
tion of the accused to his disadvantage. Generally speaking, the pro-
hibition against *ex post* laws, does not, therefore, apply where the ef-
fect of the enactment is to modify the rigor of the existing law. And,
where there is involved merely a question of penalty in which the
State alone is concerned, an enactment, abolishing such penalty, pend-
ing proceedings for its enforcement, is competent and leaves the court,
upon which is imposed the obligation of rendering the final judgment
without legal authority to impose such penalty. But, having juris-
diction of the case, *i. e.,* the right to declare the law, the court must
hold that the law does not authorize the penalty, although it may have
authorized it when the proceedings were commenced and when, by the
judgment appealed from, it was imposed. Such a case presents sim-
ply a question of the power of the sovereign by whom the penalty was
imposed to remit it, or to repeal the law imposing it, at discretion,
and does not involve the impairment of any obligations of the con-
tracts of individuals or the divestiture of individual rights of prop-
erty. This is the view which has been taken of laws authorizing im-
prisonment for debt. Calder vs. Ball, 3 Dallas, 386. Van Hoffman
vs. Quincy, 4 Wall., 552. Sutherland on Statutory Construction, 478.

A different question arises when the law imposing the penalty also
establishes a basis upon which individuals may be said to acquire
rights with respect to its enforcement, as, for instance, where the law
gives a proportion of the fine, to be recovered, to the informer, who
brings a *qui tam* action for the recovery. It has been held, in such
cases, in England, that the rights of the plaintiff become vested by the
bringing of the action, and that they would not be considered as af-
fected by subsequent legislation unless it was so declared in express
terms. Couch, *qui tam,* vs. Jeffries, 4 Burr., 2460. And so, in New

York, it has been held, where an action was brought against a sheriff for a penalty for permitting the escape of a prisoner, and, pending the action, a law was passed to the effect that a return, or recaption, before suit should be a good defence, and it was claimed that such law operated retrospectively, that it should not be so construed. Thompson, J., as the organ of the court said:

"It may in general be truly observed of retrospective laws, of every " description, that they neither accord with sound legislation nor with " the fundamental principles of the social compact. How unjust, " then, the implication against the legislature that they intend a law " to be of that description unless the most clear and unequivocal ex- " pressions are adopted." And these views were concurred in by Judge Kent. Dash vs. Van Kleeck, 7 J. R., 477. Sedgwick on Construction, Etc., 167.

Mr. Sutherland states the general doctrine upon this point in the following language:

"If a penal statute is repealed pending an appeal and before the " final action of the appellate court, it will prevent an affirmance of a " conviction and the prosecution must be dismissed or the judgment " reversed. A final judgment before repeal is not affected by it. The " repeal operates as a pardon of all offenses against it, and a bar to " any subsequent prosecution. * * *

"Where a statute imposes a penalty for an injurious act done to the " rights of others, such penalty to be recovered by the party aggrieved; " it is in the nature of a satisfaction to him, as well as a punishment " to the offender. In such a case the plaintiff is said to have acquired " a vested right to the penalty as soon as the offense is committed, and " a general repeal of the statute after action accrued does not affect " that right."

Sutherland on Statutory Construction, 166.

*       *       *       *       *       *       *       *

"When the statute to be construed will impair the obligations of a " contract by having a retrospective operation attributed to it, such " construction is inadmissible because it would bring the act in con- " flict with the prohibition of the Constitution of the United States. " More than this—it has been held, and may be considered settled, " that: 'The remedy, for the enforcement of a contract, to which a " party is entitled under State statutes in force when the contract was

" made, can not be subsequently taken away by decisions of the State " courts giving those statutes an erroneous construction any more " than by subsequent legislation'. "

Butz vs. Muscatine, 8 Wall., 575.

Whether a judgment is to be regarded as a contract is a question which has been differently determined in different jurisdictions. In so far as concerns the Constitution of the United States, it may be considered as having been definitely answered in the negative, since the Supreme Court of the United States have so decided.

Morley vs. Lake Shore & M. S. R. R., 146 U. S., 162.

In this State, it has been more than intimated that a judgment is to be regarded as a contract, though not where it is the outcome of an action in damages for a tort.

In Scott vs. Duke, 3 La. Ann., 253, Mr. Justice Rost, as the organ of the court said: "The distinction between laws impairing the obli-" gations of contracts, or of judgments which the law holds to be con-" tracts, and laws modifying the remedy given by the legislature to " enforce those obligations, was fully recognized by Judge Marshall in " the case of Sturges vs. Crowninshield", etc.

But in State ex rel. Folsom Bros. vs. Mayer, Etc., 32 Ann., 709, where the question was distinctly presented, it was held that a judg-ment for damages for a tort could not, in any manner, be considered a contract, and this doctrine was approved by the Supreme Court of the United States, in the same case on writ of error. Louisiana vs. Mayor, Etc., 109 U. S., 285.

There seems to be no reason to doubt, however, that a judgment is to be considered as *"property"* within the meaning of the 14th amend-ment.

In the case last above cited Mr. Justice Bradley, in a concurring opinion, said: "But an ordinary judgment of damages for a tort, rend-" ered against the person committing it, in favor of the person in-" jured, stands upon a very different footing. Such a judgment is " founded upon an absolute right, and is as much an article of prop-" erty as anything else that a party owns, and the Legislature can no " more violate it without due process of law than it can any other " property. To abrogate the remedy for enforcing a judgment, and " to give no other adequate remedy in its stead, is to deprive the own-" er of his property within the meaning of the 14th amendment."

Louisiana vs. Mayor, Etc., 109 U. S., 285.

In Gilman vs. Tucker, 128 N. Y., 190, it was said:

"We must bear in mind that a judgment has been rendered and that the rights flowing from it have passed beyond the legislative power, either directly or indirectly, to reach or destroy."

In Greenwood vs. Butler, 52 Kansas, 424, it was said: "Speaking generally, it is the province of the Legislature to establish, within constitutional limits, the rules, not only of procedure, but for the determination of rights by which the courts shall be governed. These rules must, in the very nature of things, precede the action of the courts in the orderly determination of the rights of parties. Those interested in any controversy are given their day in court. At the appointed time the court hears their proofs, the presentation of the law fixing their rights, and thereupon proceeds to determine all questions, of fact and of law, presented. This determination is entered of record and becomes a final settlement and determination of the controversy. It hardly seems necessary to cite authorities to support the proposition that a final judgment, so entered, is not to be changed or set aside by the law making power. Our form of government does not contemplate an appeal from the judgments of the courts to the legislature, nor does it contemplate nor authorize, by a sweeping act of the legislature, a change in the force and effect of a great class of judgments already entered."

See also Weaver vs. Lapsley, 43 Ala., 224; Merchants' Bank of Danville vs. Ballow, 32 S. E., 481.

In McCabe vs. Emerson, 6 Har.; Penn. R., 111, it was claimed that a right of appeal had been granted by statute in a case in which judgment had been rendered under a law which allowed no appeal.

Mr. Justice Rogers, as the organ of the court, said:

"My respect for the legislature is too great to allow me, for a single instant, to suppose that they designed so great a wrong as, by a retrospective act, to make that right which was clearly wrong. But granting that intention to be clearly expressed, I have no hesitation in saying that the act is unconstitutional and void." See also, to the same effect, People vs. Carnal, 2 Seldon, 463; Lawrence vs. Miller, 2 Coms., 245 (New York Repts.).

Mr. Sedgwick, in summing up his presentation of this particular question, i. e., how far remedial legislation, or legislation regulating procedure, may be permitted to affect acquired rights, says: that no general rule can be laid down, and that: "At present all that can be

"done is to bring each case to the test of previous decisions and of
"principle and, as far as possible, to endeavor to restrict the opera-
"tion of laws to future cases". Mr. Sutherland says: "No attempt
"has been made to fix definitely the line between alterations of the
"remedy which are to be deemed ligitimate, and those which, under
"the form of modifying the remedy, impair substantial rights; every
"case must be determined on its own circumstances. * * * Vested
"rights can not be destroyed, divested or impaired by direct legisla-
"tion. Their protection is one of the primary purposes of govern-
"ment. They are secured by the bill of rights, and the constitutional
"limitations upon the exercise of the sovereign powers. There is a
"vested right in property which one owns and it can not be legislated
"away. A vested right is property as tangible things are property
"when they spring from contract or the principles of the common
"law. There is a vested right in an accrued cause of action; in a
"defense to a cause of action, even in the statute of limitations when
"the bar has attached, by which an action for a debt is barred. * *
"* When a right has been perfected by judgment the fruits of re-
"covery can not be divested by new legislation, nor subjected to new
"hazard by reviving a new right of appeal, or some other mode of re-
"view." Sutherland on Statutory Construction, Sections 478, 480.

Mr. Black says: "But, as has been already stated, statutes which
"would impair or destroy vested rights will not be allowed to operate
"retrospectively, if that result can be avoided by any reasonable con-
"struction. And this rule is applicable to laws relating to remedies
"and the course of procedure and practice in courts, in respect to
"their applicability to pending suits."

Black on Interpretation of Laws, 267.

It is suggested that as the judgment obtained by Cassard in the
district court was subject to appeal, and had, in fact, been appealed
when the new constitution was adopted, it can not be regarded as a
final judgment, and hence that Cassard had no such vested, or prop-
erty right therein as to bring this case within any rule which can be
found applicable to the case of a final judgment from which no appeal
could be taken.

The judgment in question decided all the points in controversy be-
tween the parties, and had been duly signed by the trial judge, and
was, therefore, "final", according to the text of the law. C. P., 539
et seq. It is true that it was not final in the sense of having passed

beyond the reach of judicial scrutiny, since it was awaiting review in the appellate court. But, as has been, already, stated, the plaintiff acquired said judgment, as property, subject to certain conditions specified in the law under and by virtue of which he obtained it; and that it might be reviewed and reversed on appeal was one of those conditions. Except in so far as it might be affected by those specific conditions, however, the judgment was declared to be his property, and it was so by an indefeasible title.

It is unnecessary to inquire what difference, if any, it would make if there existed no specific declaration of our law that "a judgment when once rendered becomes the property of him in whose favor it is given", or if that declaration applied only to judgments rendered by courts of last resort, or which are unappealable.

If we should suppose that, in either of these other cases, the judgment in question would be regarded as merely one stage in the plaintiff's progress in the prosecution of a remedy which the State was as free to withdraw as it had been free to provide, and that the plaintiff would have no right to complain of a modification of that remedy which required him to begin over again, this would be merely to suppose a case, the conditions of which are different from those of the case which we are called on to decide.

It is one thing to provide, or withhold, or modify, a remedy, and quite another thing to declare what is, and what is not, property, and to establish the conditions under which it may be acquired and held. A remedy may be provided to-day, and modified or abolished to-morrow. But a right of property once vested in an individual, is not to be dealt with in that way. The fundamental reason for the establishment of any, and all, government is to prevent just such action, and to secure to the individual citizen the enjoyment of his property and his life, free from molestation and arbitrary interference. · The law provides how property may be acquired, and that when acquired it can not be taken from the owner save by due process of law, and bald legislation is not due process of law. If, then, the judgment in question is property it falls within the protecting rule. And the law declares, in terms, that it is property, for the text and jurisprudence are conclusive that Article 548 of the Code of Practice applies to judgments rendered by the trial judge, whether the cases decided are appealable or not.

It may be that in other jurisdictions such judgments are not declared to be property, and that they are regarded as mere incidents pertaining to a remedy, the whole of which is at all times under the control of the State, but that has nothing to do with the question before us. The State of Louisiana, acting in her sovereign capacity, has made her declaration upon the subject, and the rights of the citizens of Louisiana who are parties to the present controversy are to be determined upon the basis of that declaration. She has said that the judgment of the trial judge, when it becomes final so far as he can make it so, and whether appealable or not, is the property of him in whose favor it is given, and there is no more reason, as far as we can see, for denying full effect to this declaration, than there would be for denying that real estate purchased at sheriff's sale is the property of the purchaser.

The case of Dunning vs. West, 51 Ann., 618, was appealed directly to this court, and the conclusion was reached that the interests of justice would be best subserved by remanding it in order to obtain additional testimony. It was a fact, of which the court took notice, that, after the judgment in the lower court, the plaintiff's wife upon whose account the action had been brought (being an action in damages for personal injuries alleged to have been sustained by her) had been made, by law, a competent witness, whereas she had been unable to testify upon the original trial. Whether the case should, or should not, be remanded, for that, or for any other reason, was, however, a matter within the legal discretion of the court, and it was so dealt with. And so, it was a matter within the legal discretion of the court of appeal to have remanded the case which we are now considering, if, in the opinion of that tribunal, the interests of justice would thereby have been best subserved. But the discretion thus vested in this court, and exercised in remanding the Dunning case, and vested in the court of appeal, and exercised by it in refusing to remand the instant case, is not subject to legislative control, and it is that sort of control which is invoked when we are asked to order the court of appeal to remand this case, which, exercising the judicial discretion vested in it, it has refused to remand. As a matter of course, the judgment rendered by the trial judge in the Dunning case having been set aside, the case, when tried again, will be tried according to the law regulating the competency of witnesses which may be in force at the time of such trial, and the act of the legislature by which married

women become competent witnesses. in certain cases to which their hubsands are parties, is given a retroactive effect, *quoad* that case, but it will be observed that the case was not re-opened in recognition of the supposed obligatory force of that statute, and in so far as the reasoning might be construed as pointing in that direction, it must be considered as controlled by the views herein expressed.

A review of the other authorities to which we have been referred by the learned counsel for relators fails to disclose their applicability. There are many instances in which statutes regulating procedure may properly affect pending cases—indeed, it may be said that this is so, generally; but the line must be drawn in any specific case where, "under the form of modifying the remedy", or regulating the procedure, substantial rights, legally acquired, are impaired or divested. The authorities cited belong to the former class, the instant case to the latter.

The counsel concludes his brief with an argument upon the subject of the action of the court of appeal (in deciding the case upon its merits) upon his assignment of error. We think the question presented is not properly before us. The alleged error complained of, in the pleadings, was the refusal of the court of appeal to remand, and the prayer of the petition is that said court be ordered to remand, the case. We have concluded that there was no error in the refusal to remand, and the subsequent action of the court, affirming the judgment appealed from, formed no part of the issue there presented and decided.

It is therefore ordered, adjudged and decreed that the demand of the relators herein be rejected and this proceeding dismissed at their cost.

Mr. Justice Breaux concurs in the decree.

Mr. Justice Watkins dissents, adhering to the views expressed in Dunning vs. West, 51st Ann., 618.

## On Rehearing.

Blanchard, J. A reconsideration of these cases has led to a conclusion at variance with that announced in the former opinion of the court.

When trial was had in the district court and when a suspensive appeal from the judgment there rendered in favor of the plaintiff was taken in each of the causes to the court of appeals and lodged in the latter tribunal, the Constitution of 1879 was in force.

That Constitution (Art. 128) provided that:—"Said appeals (meaning from the District Court of the Parish of Orleans to the Court of Appeals) shall be *upon questions of law alone* in all cases involving less than five hundred dollars, exclusive of interest, and upon the law and facts in other cases". (Italics ours.)

The amount involved in each of these cases was less than five hundred dollars.

As, in case of appeal, the Court of Appeals would not have jurisdiction to sit in judgment upon the facts, the evidence adduced on the trial in the District Court was not taken down in writing. Consequently, when appeal by defendants to the Court of Appeals followed the adverse judgment of the District Court, it went up on *the law* alone.

Shortly after the causes were lodged in the Court of Appeals, and before their trial there, the Constitution of 1898 went into effect, superseding the Constitution of 1879.

The superseding Constitution changed the Court of Appeals for the parish of Orleans in some respects, among others increased the number of its judges from two to three, and enlarged its jurisdiction. Under the new Constitution its jurisdiction extends to all cases, civil or probate, when the matter in dispute or the funds to be distributed exceeds one hundred dollars, exclusive of interest, and does not exceed two thousand dollars, exclusive of interest. Art. 98.

And it is provided that all cases on appeal to the Courts of Appeal shall be tried on the original record, pleadings *and evidence.* Art. 103.

A further provision is to the effect that all causes pending in the Court of Appeals as constituted under the Constitution of 1879 were to be transferred to and held to be causes pending in the Court of Appeals as organized under the Constitution of 1898, and this was to be the case at once upon the going into effect of the latter Constitution. Sec. 7, Art. 325.

By the terms of its own declaration the Constitution of 1898 went into full force and effect from and after May 12, 1898, except as therein otherwise provided. Sec. 8, Art. 325.

It thus appears that by operation of the new Constitution the appellants in the cases at bar became entitled to the judgment of the Court of Appeals *on the facts* as well as *on the law* of their cases.

But the testimony had not been reduced to writing in the trial court, nor had any statement of facts been agreed upon.

It was, therefore, impossible, in the then state of the record, for the Court of Appeals to discharge its constitutional duty of pronouncing judgment upon the facts of the cases, and appellants were not willing to submit the same upon the law alone.

This being the situation, appellants filed in the Court of Appeals a motion to remand the cases, suggesting their right, under the Constitution of 1898, to have a trial, hearing and judgment on their appeals both on the law and facts, and praying that the causes be sent back to the District Court with instructions to be there tried anew, to the end that the evidence might be reduced to writing, in order that, in case of a second appeal, the appellate court might perform its constitutional duty of passing judgment on both the facts and the law.

This motion was denied, and the Court of Appeals, proceeding to adjudge only the law of the case, affirmed the judgments appealed from.

This was error. The motion to remand should have been granted.

The moment the Constitution of 1898 went into effect, these appeals, then pending in the Court of Appeals, became entitled to consideration, not from the point of view of the restricted jurisdiction conferred upon the Court of Appeals by the Constitution of 1879, bu' from the point of view of the enlarged jurisdiction conferred upon that court by the Constitution of 1898.

And inasmuch as there could be no judgment pronounced upon the facts because of the lack of evidence, or of an agreed statement of facts, in the record, the court should have proceeded to put itself in a position where it could discharge its whole constitutional duty to the litigants.

Obviously, the only way it could do this was to set aside the judgments appealed from and remand the cases with instructions for trial *de novo* and the taking down of the evidence offered.

Then, if a second appeal followed, it would be in a position to judge both the law and the facts.

To hold otherwise is to decree that these appeals were determinable under the jurisdiction vesting in the Court of Appeals under the Constitution of 1879, which Constitution, as the organic law of the State, had been entirely superseded, in all particulars having any bearing upon these cases, by the later Constitution, and was no longer in force.

The language of the Constitution of 1898 is plain and emphatic to the effect that all cases on appeal to the Courts of Appeal shall be tried on the original record, pleadings and evidence. On appeal when? Obviously, at the time of and subsequent to the date when the new Constitution became operative. In these cases there were the original records and pleadings, but no original evidence. It cannot be said the evidence was lacking through laches or neglect of the appellants. No, it was lacking because of the fact that when trial was had in the court of the first instance, no appeal was allowable on the facts and, hence, no necessity to reduce the testimony of witnesses to writing.

But before trial was had in the appellate court the *remedy* on appeal was enlarged; the appellants became entitled to the judgment of the higher court *on the facts* as well as the law.

It was competent for the new Constitution to so ordain.

The judgments which plaintiffs had recovered in the trial courts were not *final* judgments, no vested rights had yet accrued, no indefeasible title in anything had passed.

A suspensive appeal was pending, when, through the adoption of a new organic law, the State declared a change of public policy—that appeals in causes under five hundred dollars then pending or thereafter to be pending should be determined by the Court of Appeals upon the facts as well as the law, just as was the case with appeals in cases over five hundred dollars.

For the Court of Appeals to try these cases "on the original evidence", in the language of the Constitution, it must have the evidence before it, and the only way possible to bring this about was to remand.

That the articles of the Constitution of 1898, providing an enlarged remedy on appeal in the cases under consideration, are not violative of any guaranty of the Federal Constitution, we think clear.

The rule that the terms of a statute or constitution are not to be interpreted as having a retrospective or retroactive operation unless the language used plainly conveys that intention and is susceptible of no other interpretation, finds no application to *remedial* statutes or to the remedial provisions of organic laws. Remedial laws are an exception to the general rule, and may have retroactive or retrospective force.

The text writers so declare.

Cooley Const. Lim. (4th Ed.) 469 (*376); *Ib.* 476 (*381); Black on

Inter. of Laws, 265, *et seq.;* Sutherland on Stat. Constr. p. 221, Secs. 164, 165, 482; Wade on Retroactive Laws, Sec. 198; Am. and Eng. Ency. of Law, vol. 25, p. 451; *Ibid.* p. 506; 1 Marcade, No. 55, p. 43.

And the doctrine finds confirmation in the jurisprudence of this State.

Scott vs. Duke, 3 La. Ann. 253; Kilgore vs. Planters' Bank, 3 La. Ann. 693, Commercial Bank vs. Markham, 3 La. Ann. 698; Featherstone vs. Compton, 8 La. Ann. 285; Todd vs. Landry, 3 M. 463; Succession of Ashbridge, 1 La. Ann. 206; State vs. Slave King, 12 La. Ann. 593; Frey vs. Hebenstreit, 1 Rob. 565; Baldwin vs. Bennett, 6 Rob. 309; Cooper vs. Hodge, 17 La. 476; Borgsted vs. Nolan, 17 La. 593; Hoa vs. Lefranc, 18 La. Ann. 397; Walmsley vs. Nicholls, 36 La. Ann. 799; State *ex rel.* Bonnett vs. Judge, 33 La. Ann. 103; Goodwell vs. Elkins, 51 La. Ann. 522; Dunning vs. West, 51 La. Ann. 618.

In the last case cited, very recently decided, the court used this language:—"The only question really is whether the law enacted subsequent to the ruling in the court below should be considered as now applying. We think it does apply. The law is entirely remedial and affects none of the vested rights of any one". And in denying the application for rehearing it was said:—"But the accepted canon of construction of retroactive laws, or those to which a retrospective effect is given, is that whatever relates to the manner of conducting and trying a suit is always within the control of the legislature, who can, at any time, make any change or modification they may think conducive to the public good, and a proper administration of justice in our courts."

The Court of Appeals cites, in support of its ruling denying the motion to remand, the opinion of this court in Rosetta Gravel, Paving and Improvement Company vs. Kennedy, 51 La. Ann. 1535.

The main question there did not arise on a motion to remand in order that the evidence might be taken down in writing so that the Court of Appeals may, on a subsequent appeal, pass on the facts as well as the law of the case, but did arise in relation to certain testimony offered in the trial court and excluded, to which exclusion no sufficient bill of exceptions was taken so as to reserve the point and bring it properly before the appellate court for its ruling.

There are, however, in the opinion handed down in that case, on the application for rehearing, statements of the law in conflict with the rule announced in this opinion, and in the opinion of the court in

Dunning vs. West, *supra,* and in so far as this is so, the Rosetta Gravel Co. case must be considered overruled.

For the reasons assigned, it is ordered that the former decree of this court herein be set aside, and it is now ordered, adjudged and decreed that the judgment of the Court of Appeals be annulled and vacated, and that this cause be remanded to the court of the first instance for further proceedings according to law, and with instructions to take down in writing the testimony offered on the second trial of the case there, to the end that should an appeal be prosecuted to the Court of Appeals from the judgment rendered that tribunal may be in a position to pass upon both the law and the facts of the case.

It is further ordered, etc., that the costs herein incurred in the Court of Appeals and in this court be borne by plaintiff, those of the District Court to abide the final determination of the cause.

Mr. JUSTICE WATKINS handed down a concurring opinion; the Chief Justice dissented and filed his reasons; Mr. JUSTICE MONROE dissenting, expressed his views orally from the bench.