## PENNSYLVANIA CO. v. CITY OF CHICAGO.

### YAZOO & M. V. R. CO. v. SAME.

#### (Circuit Court, N. D. Illinois. June 1, 1897.)

CONSTITUTIONAL LAW—LIABILITY OF CITY FOR DAMAGE BY MOB.

A state may constitutionally compel its counties and cities to indemnify against losses of property arising from mobs and riots within their limits, independently of any misconduct or negligence on the part of such city or county to which the loss can be attributed. The Illinois statute to that effect (Rev. St. 1895, c. 38, § 256a) is therefore valid.

These were actions on the case against the city of Chicago, brought by the Pennsylvania Company and the Yazoo & Mississippi Valley Railroad Company, respectively. Plaintiffs demur to defendant's pleas.

George Willard, for plaintiff Pennsylvania Co.

C. B. Gwinn, for plaintiff Yazoo & M. V. R. Co.

Charles S. Thornton, for defendant.

GROSSCUP, District Judge. The action is brought under that section of the Criminal Code of the state of Illinois which provides as follows:

"Whenever any building or other real or personal property, except property in transit, shall be destroyed or injured in consequence of any mob or riot composed of twelve or more persons, the city, or if not in a city, then the county in which such property was destroyed shall be liable to an action by or in behalf of the party whose property was thus destroyed or injured, for three-fourths of the damages sustained by reason thereof." Rev. St. Ill. 1895, c. 38, § 256a.

The declaration avers the possession of property by the plaintiffs, and its destruction within the city of Chicago, at the time named, in consequence of a mob of 12 or more persons, and there is in its averment substantially nothing more. The declaration in no feature proceeds upon any grounds of negligence or misconduct upon the part of the city or any of its agencies, nor upon the ground of any contract relation between the city and the plaintiffs. The defendant pleads that it in fact exercised all its power to prevent the loss complained of; that the state of Illinois and the United States of America, equally with the city of Chicago, were interested and engaged in protecting the property eventually lost, and that the city of Chicago has no property or funds except such as can hereafter be raised by taxation to meet the payment of such losses. The plaintiffs have demurred to these pleas, the consideration of which carries the case back to the declaration.

The statute upon which the case proceeds is one of indemnity, pure and simple, and can be sustained only upon the principle that a state may rightfully and constitutionally compel its subdivisions, such as counties or cities, to indemnify against losses arising from mobs

and riots within their limits, independently of any misconduct or negligence upon the part of such city or county, to which the loss can be attributed. The contract of the city to preserve property within its limits, or the misconduct or negligence of the city in the matter of police provision, or the exercise of its police equipment, might properly be the basis of a suit upon the part of those who had suffered losses by reason of the city's failure to perform its contract, or its failure to properly and carefully provide for or execute police duties. But this action calls into exercise no such legal principles. There may be no such contract; there may have been no such negligence or misconduct; and yet the plaintiffs under the theory of this declaration may be entitled to recover. The statute in question burdens the taxpayers of the city to reimburse the losses suffered within its limits by means of a mob of 12 or more persons, independently entirely of any connection, other than that arising from locality, between the city and such losses. The question thus raised has been argued with great ability by counsel for the city, and, if the question were an original one, or had not been disposed of by such weight of authority, I might have come to a conclusion different from that which I shall now announce. The same question has been before the courts of last resort: New Hampshire: Underhill v. Manchester, 45 N. H. 214. New York: Darlington v. Mayor, etc., 31 N. Y. 164. Pennsylvania: Allegheny v. Gibson, 90 Pa. St. 397. In each of these cases the constitutional validity of similar statutes has been upheld. The doctrine announced in these cases has likewise received the approval of Judge Cooley. Cooley, Tax'n, 480. The right of a state to impose such a burden upon a municipality is touched upon in the opinion, though not involved in the decision, of the supreme court of the United States in Louisiana v. Mayor, etc., of City of New Orleans, 109 U. S. 285, 3 Sup. Ct. 211, where it is said:

"The right to reimbursement for damages caused by a mob or riotous assemblage of people is not founded on any contract between the city and the sufferers. Its liability for the damages is created by a law of the legislature, and can be withdrawn or limited at its pleasure. Municipal corporations are instrumentalities of the state for the convenient administration of government within their limits. They are invested with authority to establish a police to guard against disturbance; and it is their duty to exercise their authority so as to prevent violence from any cause, and particularly from mobs and riotous assemblages. It has, therefore, been generally considered as a just burden cast upon them to require them to make good any loss sustained from the acts of such assemblages which they should have repressed."

The above quotation, it is true, is obiter dicta; neither is it at all clear that the court had in mind any other than a case where, by the exercise of any or all of the city's legitimate powers, the mob could have been repressed. But there is a bearing in the intimation, taken in connection with the preceding authorities, especially in the absence of any countervailing decision, which seems to carry the sanction of the court to the constitutionality of such statutes; at least there is enough to prohibit a trial court from declaring the statute unconstitutional, except upon grounds the clearness and stability of which are beyond question. Upon these considerations, I feel it my duty to sustain the demurrers.