*SIMMONS *et al.* v. MULLEN.

No. 1535.   Opinion Filed March 12, 1912.

(122 Pac. 518.)

**INDIANS—Allotments—Exemptions.** The exemption of lands, allotted under an act approved July 1, 1902 (Act July 1, 1902, c. 1362, 32 St. at L. 641), known as the Supplemental Agreement between the Choctaw and Chickasaw Nations and the United States, from any "debt  *  *  *  contracted prior to the time at which said land may be alienated," does not exempt them from liabilities · for the torts of the allottee perpetrated prior to the allotment.

(Syllabus by the Court.)

*Error from District Court, Johnston County;*
*A. T. West, Judge.*

---

*Appealed to the United States Supreme Court.

·Action by L. V. Mullen against N. H. Simmons and others. Judgment for plaintiff, and defendants bring error. Reversed.

*L. S. Dolman,* for plaintiffs in error.

*Ledbetter & Moore,* for defendant in error.

TURNER, C. J.   On November 26, 1910, L. V. Mullen,·defendant in error, sued N. H. Simmons, as sheriff of Johnston county, in the district court of said county.   The petition substantially states that plaintiff is the owner of a certain tract of land (describing it) conveyed to him from F. A. Bonner by warranty deed October 12, 1908, auly filed for record; that said Bonner is a citizen of the Choctaw Tribe of one-sixteenth degree of Indian blood; that said land was his allotment as a member of said tribe, which he, on said day, had the unrestricted right to sell; that defendant as sheriff aforesaid had levied an execution on said land issued on a judgment in the case of Millord F. Ham *et al.* v. F. A. Bonner, theretofore pending in the United States Court for the Southern Judicial District of Indian Territory, sitting at Ardmore; that said judgment was rendered and the debt thereby evidenced contracted more than five years prior to the date of said execution, and at a time when said lands were inalienable and exempt from the operation of said judgment and could not be sold under execution issued thereon; that said sheriff had wrongfully levied upon and advertised said land for sale, and would sell the same to satisfy said execution, and give a deed therefor, and thereby cast a cloud upon his title unless restrained.   He prayed that such be, and the same was, done by the temporary restraining order.   For answer defendant admitted the citizenship of said Bonner to be as stated, justified under the writ which was dated October 1, 1908, alleged that the land was subject to levy and sale thereunder, that plaintiffs to said judgment were necessary parties, and prayed that they be brought in and the restraining order dissolved.   Thereafter came Millord F. Ham and others, plaintiffs in said judgment, and by leave filed their interplea, which substantially states that on January 31, 1901, they recovered judgment in the United States Court

for the Southern Judicial District of Indian Territory, sitting at Ardmore, against Frank Bonner in tort for some $3,000; that execution issued thereon and was levied as set forth in plaintiff's petition; that on February 23, 1906, said Bonner, a Choctaw of one-sixteenth Indian blood, became the owner of said land by allotment, whereupon said judgment became and is a lien upon said land, and was a lien thereupon at the time he sold the same to plaintiff, who took the same with full knowledge of said judgment and levy of their execution. They prayed that said lien be foreclosed and said land sold to satisfy said judgment, interplea, and cost, and for general relief. The precise question raised by plaintiff's demurrer, which was sustained, to the answer and interplea, is whether this allotment is exempt from execution on a judgment for tort. The trial court held that it was. This was error. Interpleader's judgment was obtained January 31, 1901. Bonner was allotted pursuant to the provisions of an act approved July 1, 1902, known as the Supplemental Agreement between the Choctaw and Chickasaw Nations and the United States. Section 15 of said act reads:

"Lands allotted to members and freedmen shall not be affected or incumbered by any deed, debt or obligation of any character contracted prior to the time at which said land may be alienated under this act, nor shall said lands be sold except as herein provided."

As the act of Congress of May 27, 1908 (Act May 27, 1908, c. 199, 35 St. at L. 312), removed restrictions upon the alienation of this allotment, and the judgment sought to be enforced against it was obtained prior thereto, it is plaintiff's contention that said judgment constituted a "debt  *  *  *  contracted prior to the time at which said land may be alienated" within the contemplation of said act. Not so. A judgment in damages for tort is not a "debt contracted" within such contemplation. This was our holding in *Shelby v. Zeigler,* 22 Okla. 799, 98 Pac. 989. In that case plaintiff obtained judgment against defendant in damages for tort after the receiver's final certificate had issued to him pursuant to act of Congress May 20, 1862 (U. S. Comp. St. 1901, p. 1398). Prior to execution on the judgment, and in fraud of plain-

tiffs' rights, defendant conveyed the land. In passing upon the question of whether the same was subject to execution in satisfaction of said judgment the court said:

"Rev. St. U. S. c. 5, sec. 2296 (U. S. Comp. St. 1901, p. 1398), provides: 'No land acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuance of the patent therefor.' The question presented by this record is whether or not a tort committed, independent of any contract, for which an action would lie at common law for the recovery of damages, but would abate with the death of the aggrieved party, is such a liability as was contemplated, and within the purview of the term 'any debt contracted.' "

And, after quoting liberally and with approval from numerous authorities, held, in effect, that a judgment in damages for tort, while perhaps a liability, was not a "debt contracted" within the contemplation of that part of the act under construction; and in the syllabus said:

"After the receiver's final receipt or certificate has been issued, the homestead, under Act Congress May 20, 1862, c. 75, sec. 4, 12 St. at L. 393, Rev. St. U. S. c. 5, sec. 2296 (U. S. Comp. St. 1901, p. 1398), is not exempt as against an execution, or other proceedings on a judgment for tort, independent of any contract, rendered on a date subsequent to the issuance and delivery of such receipt or certificate."

In *Brun v. Mann,* 151 Fed. 145, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154, Judge Sanborn, Circuit Judge, speaking for the court, said:

"The real controversy between the parties to this suit is whether or not the lands patented to Tillett in 1892 are exempt from liability to pay the judgment in favor of Mann, which is founded on Tillett's wrongful taking and conversion of the plaintiff's cattle in 1881. The acts of Congress under which Tillett secured the lands provided that no land acquired thereunder shall be liable for the satisfaction of any 'debt contracted prior to the issuance' in the one case of the patent (2 U. S. Comp. St. 1901, p. 1398, sec. 2296; Act May 20, 1862, c. 75, sec. 4, 12 St. at L. 393), and in the other of the final certificate thereunder (2 U. S. Comp. St. 1901, pp. 1534, 1535; Act March 4, 1896, c. 40, 29 St. at L. 43 [U. S. Comp. St. 1901, p. 1537]; Act June 14, 1878, c. 190, sec. 4, 20 St. at L. 113, 114). The complainant insists that

his claim is not a debt contracted by Tillett, but that it is a liability incurred by him for a wrong, and hence that the land is not exempt from the payment of his claim. The defendants challenge this contention, and claim the exemption of the lands and the water rights appertaining thereto. If this issue be decided in favor of the complainant, he will be entitled to a sale of the lands, and, if it be determined in favor of the defendants, the lands are free from the complainant's claim. * * * The acts of Congress declare that no lands acquired under the homestead and timber culture laws shall be liable for the satisfaction of any 'debt contracted prior' to their acquisition from the government. 2 U. S. Comp. St. 1901, p. 1398, sec. 2296; Act May 20, 1862, c. 75, sec. 4, 12 St. at L. 393; 2 U. S. Comp. St. 1901, pp. 1534, 1535; Act March 4, 1896, c. 40, 29 St. at L. 43 (U. S. Comp. St. 1901, p. 1537); Act June 14, 1878, c. 190, sec. 4, 20 St. at L. 113, 114. Tillett acquired these lands under these statutes. He unlawfully took and converted Mann's cattle before he acquired them. He never contracted, or agreed or consented, to pay for the cattle. The question is: Are lands thus acquired exempt from liability for wrongs perpetrated as well as for debts contracted by those who secure them? The line of demarcation between the two great classes of the liabilities of parties, between liabilities created by agreement or by consent and liabilities created by torts, can never be absent from the minds of those members of Congress whose duty it is to criticise, amend, and perfect its acts. The Constitution of the United States broadened and deepened this line of separation, and projected it through all the legislation in the nation when it prohibited the states from impairing the obligation of contracts (U. S. Const. art. 1, sec. 10), but permitted them to impair the obligations of liabilities and judgment for wrongs. *Louisiana v. Mayor of New Orleans,* 109 U. S. 285, 288, 3 Sup. Ct. 211, 27 L. Ed. 936; *Garrison v. City of New York,* 21 Wall. 205, 22 L. Ed. 612; *McAfee v. Covington,* 71 Ga. 272, 51 Am. Rep. 263. * * * If an act provided that lands should be exempt from every liability incurred, there could be no doubt that they would be free from all liabilities, both from those arising out of contracts, and from those arising out of torts. If it provided that lands should be exempt from every debt contracted, but should still be chargeable with every other liability incurred by its owners, no one would have the hardihood to say that it was free from liability for their torts. These terms and their meanings could not have failed to occur to those who drafted, or to those who passed, the acts of Congress under consideration, and their rejection of the familiar and broad term 'liability in-

curred' and their selection and adoption of the limited expression 'debt contracted' is a demonstration that they had no purpose to exempt the lands they gave from liability for wrongs which the patentees might have perpetrated and that they intended to free it from the debts which sprang from their agreements only."

And in the syllabus said:

"The exemption of lands acquired under the homestead laws and the timber culture laws (2 U. S. Comp. St. 1901, pp. 1534, 1535; Act March 4, 1896, c. 40, 29 St. at L. 43 [U. S. Comp. St. 1901, p. 1537]; Act June 14, 1878, c. 190, sec. 4, 20 St. at L. 113, 114; 2 U. S. Comp. St. 1901, p. 1398, sec. 2296; Act May 20, 1862, c. 75, sec. 4, 12 St. at L. 393) from any 'debt contracted' previous to their acquisition, does not exempt them from liabilities for the torts of the entrymen previously perpetrated."

We are therefore of opinion that the lien of interpleader's judgment attached to the allotment as soon as it came into being, that plaintiff took the land subject thereto, and that the same should be enforced and said land sold to satisfy the same, and that, too, notwithstanding the provisions of the fifteenth section of the act of July 1, 1902, which has no material bearing on the question.

The judgment of the trial court is reversed and rendered.

All the Justices concur.