**I.A.M. NATIONAL PENSION FUND BENEFIT PLAN C, et al.,**
**Plaintiffs,**

v.

**STOCKTON TRI INDUSTRIES, Defendant.**

**Civ. A. No. 81–2907.**

United States District Court,
District of Columbia.

Nov. 29, 1984.

Robert T. Osgood, Joseph P. Martocci, Jr., Washington, D.C., and Edward Lev, Laura Steinberg, Katherine Ross, Boston, Mass., of counsel, Sullivan & Worcester, Boston, Mass., for plaintiffs.

John T. Hayden, Samuel F. Hoffman, Steven A. Inkellis of Littler, Mendelson, Fastiff & Tichey, San Francisco, Cal. and, Steven A. Inkellis of Squire, Sanders & Dempsey, Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

### Introduction

This case is before the Court after having been remanded from the United States Court of Appeals for the District of Columbia Circuit. *I.A.M. National Pension Fund Benefit Plan C, et al., v. Stockton Tri Industries*, 727 F.2d 1204 (D.C.Cir. 1984) ("I.A.M."). Upon consideration of the parties cross motions for summary judgment, oppositions thereto, the entire record herein, and in light of the recent congressional enactment of Section 558 of The Deficit Reduction Act of 1984, Pub.Law No. 98–369 ("Section 558"), 98 Stat. 494, the court hereby grants the defendant's motion for summary judgement.

### Background

I.A.M. National Fund Benefit Plan C ("The Plan") brought action in this Court to collect withdrawal liability under the retroactive provisions of the Multi-Employer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381, *et seq.*, from the defendant, Stockton Tri Industries ("Stockton"). On December 2, 1982, this Court granted Summary Judgment in favor of Stockton, holding that, within the meaning of 29 U.S.C. § 1383 (a)(1), Stockton had completely withdrawn from participation in The Plan before the retroactive date upon which MPPAA imposed withdrawal liability. The Court of Appeals in-

terpreted Section 1383(a)(1) differently and reversed this Court's decision, holding that Stockton had *not* completely withdrawn before the liability date. *I.A.M. I, supra*, at 1210, 1211. Thereupon, the case was remanded to this Court for consideration of Stockton's other arguments against imposition of withdrawal liability which this Court did not reach in light of its decision on the statutory issue. *Id.*, at 1212.

I. *The Recent Congressional Enactment of the Deficit Reduction Act Voids Any Withdrawal Liability Stockton May Have Heretofore Had.*

In Stockton's original motion for Summary Judgment, it attacked the constitutionality of MPPAA's retroactive withdrawal liability provision. The constitutionality of this provision is no longer in question, however, as it was recently upheld by the United States Supreme Court in *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, —— U.S. ——, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). Nevertheless, because of the July, 1984, enactment of Section 558 of the Deficit Reduction Act, Stockton has been released from any withdrawal liability which it may have heretofore had.

█ Section 558 states that "any withdrawal liability incurred by an employer ... as a result of the complete or partial withdrawal of such employer from a multiemployer pension plan ... shall be void." 98 Stat. 899. Thus, The Plan no longer has a cause of action against Stockton, and this suit must be dismissed.

II. *Section 558 Is Constitutional.*

█ The Plan argues that, because MPPAA afforded The Plan a legal claim against Stockton for withdrawal liability, Section 558 is unconstitutional in that it violates the due process clause of the 5th Amendment by denying them a "vested property right." The Court disagrees.

█ First, it is clear that by enacting subsequent statutes Congress may withdraw rights granted by previous statutes without violating any provision of the Constitution. *Kline v. Burke Construction*

*Co.*, 260 U.S. 226, 234, 43 S.Ct. 79, 82, 67 L.Ed. 226 (1922); *State of Louisiana v. Mayor*, 109 U.S. 285, 287–88, 3 S.Ct. 211, 212–13, 27 L.Ed. 936 (1883); *Battaglia v. General Motors Corp.*, 169 F.2d 254, 259 (2d Cir.1948), *cert. denied*, 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948); *Murray v. Homestead Valve Mfg. Co.*, 84 F.Supp. 572, 573 (W.D.Penn.1947). As the United States Supreme Court stated in *State of Louisiana:*

> [Where] liability for the damages is created by a law of the legislature, [it] can be withdrawn or limited at [the legislature's] pleasure .... The imposition [of the original law] is simply a measure of legislative policy ... and subject, like all other measures of policy, to any change the legislature may see fit to make. *Id.* at 287–88, 3 S.Ct. at 212–13.

■ Second, any legislation in the field of national economic policy is constitutional so long as it is not arbitrary or irrational. *Pension Benefit Guar. Corp., supra,* at ——, 104 S.Ct. at 2717–18.

> [I]t is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature had acted in an arbitrary and irrational way. *See, e.g., Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). (*Pension Benefit Guar. Corp., supra,* quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976)).

There is no evidence that Section 558 is arbitrary or irrational. Congress originally enacted the retroactive withdrawal liability provision of MPPAA in order to ensure the financial stability of the multiemployer pension plan system. Because MPPAA was going to place burdensome liability on withdrawing employers, Congress was concerned that employers would withdraw *en masse* from multiemployer plans prior to the enactment of MPPAA. Thus, by imposing withdrawal liability, retroactive from the date of MPPAA's enactment, Congress hoped to dissuade these feared widespread withdrawals during the time in which the legislation was being considered by Congress. *Pension Benefit Guar. Corp.,* 104 S.Ct. at 4814.

Section 558, on the other hand, was enacted because the concerns that originally prompted retroactive imposition of withdrawal liability have already been fulfilled and retroactive withdrawal liability is no longer necessary. As the Senate Finance Committee report states:

> The committee believes that the amounts of money involved in the withdrawals that took place during the retroactive period are not necessary to protect the financial integrity of the multiemployer defined benefit pension plans.

Senate Comm. on Finance, Deficit Reduction Act of 1984, Explanation of Provisions Approved by the Committee, March 21, 1984 (Vol. I), S.Rpt. 98–169 (98th Cong., 2d Sess.) p. 377.

In addition, Congress believed that retroactive withdrawal liability imposed undue hardship on employers who withdrew from pension plans during the retroactive time period:

> Many employers who withdrew from multiemployer plans prior to the date of the enactment of the MPPAA may have unexpectedly incurred significant withdrawal liability. *Id.*

Finally, it is important to note that Section 558 was vigorously considered in the legislative process. As stated by Congressman Rostenkowski: "This provision [Section 558], which our colleagues on education and labor opposed, was hard fought and one of the most difficult items to deal with in this conference ...." 130 Cong. Rec.H. 7091 (daily ed. June 27, 1984) (remarks of Rep. Rostenkowski).

From the foregoing, it can be seen that Section 558 is clearly not "arbitrary" or "irrational." On the contrary, the Section

was thought about, argued over, and finally enacted—for at least two explicit reasons. Congress determined that the retroactive imposition of withdrawal liability was unnecessary and unduly harsh and that such liability should, therefore, be cancelled. Section 558 represents an entirely rational means toward achieving that end.

Courts have also been known to strike down legislation when it is retroactive and is so "wholly unexpected and disruptive that harsh and oppressive consequences follow." *Hazelwood Chronic & Convalescent Hospitals, Inc., v. Weinberger,* 543 F.2d 703, 708 (9th Cir.1976), *vacated* on *other grounds,* 430 U.S. 952 (1977) (*Shelter Framing Corp. v. Pension Benefit Guar. Corp.,* 705 F.2d 1502, 1510 (9th Cir.1983). Although Section 558 is retroactive legislation, this Court finds that it was neither "wholly unexplained" nor "harsh and oppressive." Rather, this Court finds the effect of Section 558 to be limited and reasonable.

The employee pension plan area is one that is subject to constantly changing statutory and regulatory requirements. *See, e.g., P.B.G.C. v. R.A. Gray & Co., supra.* Participants in this volatile field are presumed to have knowledge of that fact and any "vested" reliance on statutory or regulatory standards would clearly be misplaced. *Shelter Framing, supra,* at 1512. But there is an even more compelling reason why The Plan cannot claim that Section 558 disrupts their "vested" rights. Ever since The Plan tendered their demand for withdrawal liability to Stockton, Stockton vigorously contested that it owed The Plan anything. In fact, this case has been in litigation since the day MPPAA was originally enacted. Thus, this Court finds that there could not have been any reasonable reliance on The Plan's part so as to constitute any "vesting" of rights and section 558, therefore, did not work an undue hardship on The Plan. For the foregoing reasons, this Court will grant summary judgment for the defendant.