**LONG ISLAND OIL PRODUCTS CO., INC., Plaintiff-Appellee,**

**v.**

**LOCAL 553 PENSION FUND and Bernard Pellegrino, Joseph Rudin, William Kenny, Robert Greenes and Thomas Hanney, as Trustees of the Local 553 Pension Fund, Defendants-Appellants.**

**No. 1226, Docket 85–7008.**

United States Court of Appeals, Second Circuit.

Argued June 28, 1985.

Decided Sept. 27, 1985.

Eugene S. Friedman, New York City (Cohen, Weiss & Simon, New York City, of counsel), for defendants-appellants.

Alan D. Levine, Kew Gardens (Pearlman, Apat & Futterman, Kew Gardens, of counsel), for plaintiff-appellee.

Peter H. Gould, Washington, D.C. (Edward R. Mackiewicz, Baruch A. Fellner, J. Stephen Caflisch, David F. Power, Kenton Hambrick, Washington, D.C., of counsel), for amicus curiae Pension Ben. Guar. Corp.

Before KEARSE and CARDAMONE, Circuit Judges and WYATT, District Judge.*

CARDAMONE, Circuit Judge:

The question on this appeal is whether Congress violates due process when it first enacts a law having retroactive application and then—after having second-thoughts—rescinds it. This case, one of the many disputes engendered by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA or Act), pits a multiemployer pension benefit fund against an employer that has withdrawn from the fund. When Congress enacted the MPPAA—which became law on September 26, 1980—it provided that the Act's effective date was to be five months earlier—on April 29, 1980. Since the date of its enactment, the withdrawal liability provisions of the Act, and more particularly the retroactive application of those provisions, have been the target of repeated legal challenges. Time and again employers have attacked the Act's constitutionality in an effort to escape its liabilities.

The air was cleared for a brief time on June 18, 1984 when the Supreme Court unanimously ruled that the Act's retroactive application was consistent with the Due Process Clause of the Fifth Amendment. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). That settled state of affairs lasted only one month until July 18, 1984 when Congress amended the effective date of the Act thereby eliminating its retroactive application and precipitating another spate of litigation, of which this case is one. In this new round of litigation multiemployer plans that had anticipated collecting from employers withdrawing prior to September 26, 1980 challenged the constitutionality of Congress' decision to alter the Act's effective date. The issue raised is whether Congress' repeal of the Act's retroactive effec-

---

* Honorable Inzer B. Wyatt, United States District Judge for the Southern District of New York, sitting by designation.

tive date deprives multiemployer pension funds of their property without due process of law in violation of the Fifth Amendment. We hold that it does not.

## I. BACKGROUND

### A. *Facts and Proceedings Below*

Plaintiff-appellee Long Island Oil Products (Long Island Oil or employer) was a participating employer in defendant-appellant Local 553 Pension Fund (Fund), a multiemployer pension benefit plan within the meaning of 29 U.S.C. §§ 1002(37)(A) (1982) and 1301(a)(3) (1982). The employer contributed to the Fund on behalf of its employees pursuant to a collective bargaining agreement with Local 553. On May 15, 1980 Long Island Oil sold its business and withdrew from the Fund.

The MPPAA, 29 U.S.C. §§ 1381–1461 (1982), became law on September 26, 1980. Detailed explanations of the mechanics of the MPPAA and accounts of its extensive legislative history are reported elsewhere. *See, e.g., TIME–DC, Inc. v. Management-Labor Welfare & Pension Funds,* 756 F.2d 939, 944, 946–47 (2d Cir.1985); *Textile Workers Pension Fund v. Standard Dye & Finishing Co.,* 725 F.2d 843, 847–49 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984); *Peick v. Pension Benefit Guaranty Corp.,* 539 F.Supp. 1025 (N.D.Ill.1982), *aff'd,* 724 F.2d 1247, 1251–56 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984). The Act's most significant parts are the withdrawal liability provisions that require a withdrawing employer to pay its shares of the unfunded vested employee benefits for which the plan is liable. The MPPAA applied to any employer that withdrew after April 29, 1980—five months prior to the date when the Act became law. *See* 29 U.S.C. § 1461(e)(2)(A) (1982) (amended 1984).

As a result of the retroactive application of the MPPAA, Long Island Oil, which withdrew from the Fund three weeks after the law's effective date, owed the Fund a claimed withdrawal liability totalling $270,-655. The Fund notified the employer of this liability, but received no payment. On December 29, 1982 Long Island Oil filed the present action in the United States District Court for the Southern District of New York (Knapp, J.), seeking an injunction preventing the Fund from collecting any withdrawal liability and a judgment declaring the MPPAA to be unconstitutional. The Fund counterclaimed for the full amount of the withdrawal liability. Shortly thereafter the Supreme Court granted certiorari in a case raising the same constitutional challenge. Judge Knapp therefore stayed the present action pending the Supreme Court's decison. On June 18, 1984 the Court unanimously upheld the constitutionality of the retroactive application of the withdrawal liability provisions. *R.A. Gray & Co.,* 104 S.Ct. at 2709. As a consequence, the district court granted on June 29, 1984 the Fund's motion for summary judgment, but the decision was never reduced to a judgment.

### B. *Congressional Action*

While the present action was pending, Congress considered amendments to the MPPAA that would repeal the retroactive effective date of the Act by moving the effective date to September 26, 1980—the date of enactment. In 1984 the Senate Finance Committee included as part of the Deficit Reduction Act of 1984 a provision amending the Act's effective date. The MPPAA amendment passed the Senate and was accepted by the Conference Committee. The full provision, Pub.L. No. 98–369, § 558(a)(1), 98 Stat. 494, 899 (1984), is as follows:

(1) Liability.—Any withdrawal liability incurred by an employer pursuant to part 1 of subtitle E of title IV of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1381 et seq.) as a result of complete or partial withdrawal of such employer from a multiemployer plan before September 26, 1980, shall be void.

Section 558(a)(2) provides that a plan sponsor shall refund with interest any amounts paid by an employer for such withdrawal liability, less a reasonable amount for ad-

ministrative expenses incurred by the plan sponsor, other than legal expenses.

Congress passed the Deficit Reduction Act on June 28 and the President signed it into law on July 18, 1984. Thus, just one month after the Supreme Court had held the retroactive provisions constitutional, Congress repealed them. Employers withdrawing from multiemployer plans between April 29 and September 26, 1980 no longer owed any withdrawal liability.

On October 19, 1984 the Fund filed a motion for Entry of Judgment contending that § 558 was unconstitutional. The district court ruled that since the employer had withdrawn prior to September 26, 1980 it was no longer liable for withdrawal liability under the MPPAA. Finding § 558 constitutional, the district court entered judgment denying the Fund's counterclaim and dismissing the employer's complaint for mootness. The Fund appeals asserting that in nullifying the retroactive withdrawal liability provisions of the MPPAA Congress acted irrationally, or without a legitimate legislative purpose. We affirm.[1]

## II DISCUSSION

### A. *Presumption of Constitutionality*

■ "It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976); *see R.A. Gray & Co.*, 104 S.Ct. at 2717–18; *Standard Dye*, 725 F.2d at 849. It is not the judiciary's task to balance the economic costs and benefits of a challenged Act, or to measure it against a particular social or economic philosophy. *See Olsen v. Nebraska ex rel. Western Reference & Bond As-*

*sociation*, 313 U.S. 236, 246, 61 S.Ct. 862, 865, 85 L.Ed. 1305 (1941) ("We are not concerned ... with the wisdom, need, or appropriateness of the legislation"). Under our constitutional system, it is for Congress, not the courts, to decide whether legislation is wise and useful. *Ferguson v. Skrupa*, 372 U.S. 726, 729, 83 S.Ct. 1028, 1030, 10 L.Ed.2d 93 (1963). And so we must defer to the legislature's efforts to regulate economic affairs, asking only in a given case whether Congress had a legitimate legislative purpose which it furthered by rational means.

■ This limited standard of constitutional review applies "even though the effect of the legislation is to impose a new duty or liability based upon past acts." *Standard Dye*, 725 F.2d at 849. Legislation that applies retroactively is not unlawful "solely because it upsets otherwise settled expectations." *Turner Elkhorn*, 428 U.S. at 16, 96 S.Ct. at 2892. *See Fleming v. Rhodes*, 331 U.S. 100, 107, 67 S.Ct. 1140, 1144, 91 L.Ed. 1368 (1947); *Louisiana v. Mayor of New Orleans*, 109 U.S. 285, 287, 3 S.Ct. 211, 212, 27 L.Ed. 936 (1883) ("liabilit[ies] ... created by a law of the legislature ... can be withdrawn or limited at [the legislature's] pleasure"). A challenged statute is constitutional so long as its retroactive application—like any future application—is justified by a legitimate legislative purpose furthered by rational means. *R.A. Gray & Co.*, 104 S.Ct. at 2718.

### B. *Were Rational Means Employed to Further a Legitimate Legislative Purpose*

■ In deciding whether Congress's decision to nullify the retroactive effective date of the MPPAA was a rational regulation of the rights and duties of employers and multiemployer plans, we start with Congress' explanation for the change.

---

1. Some lower courts have already upheld the constitutionality of § 558, including *I.A.M. National Pension Fund v. Nuzum Chevrolet*, 6 EBC 1168 (D.D.C. Mar. 8, 1985); *I.A.M. National Pension Fund v. Stockton Tri Industries*, 598 F.Supp. 267, 269 (D.D.C.1984), *appeal docketed*, No. 84–5944 (D.C.Cir. Dec. 31, 1984); *I.A.M. National Pension Fund v. Allied Corp.*, 596 F.Supp. 481, 483 (D.D.C.1984), *appeal docketed*, Nos. 84–5869, 84–5870 (D.C.Cir. Dec. 21, 1984).

The Senate Finance Committee in its Report in connection with § 558 provided the following "Reasons for Change":

Many employers who withdrew from multiemployer plans prior to the date of enactment of the MPPAA may have unexpectedly incurred significant retroactive withdrawal liability. The committee believes that the amounts of money involved in the withdrawals that took place during the retroactive period are not necessary to protect the financial integrity of multiemployer defined benefit pension plans.

Senate Comm. on Finance, Deficit Reduction Act of 1984, Explanation of Provisions Approved by the Committee, March 21, 1984 (Vol. I), S.Rep. No. 98–169, 98th Cong., 2d Sess. 337 (1984) [hereinafter cited as *Senate Rep.*]

Thus, the Senate Report provided two rational reasons for amending the Act. First, the Finance Committee concluded that the retroactive application of the MPPAA had an unduly burdensome effect on employers that withdrew between April and September 1980. The legislative history of the repealed retroactive provisions helps explain this conclusion. Prior to the enactment of the MPPAA, employers withdrawing from multiemployer plans were not subject to any withdrawal liabilities. The MPPAA's drafters were concerned that employers would anticipate the impending Act's substantial new withdrawal liabilities and withdraw prior to the law's enactment. Congress therefore retroactively applied the statute to negate any incentive employers might have to take advantage of the leisurely legislative process. 126 Cong.Rec. 20, 177 (daily ed. July 29, 1980); *see generally R.A. Gray & Co.*, 104 S.Ct. at 2713–15, 2718–19.

After assessing the impact of such strong disincentive medicine on withdrawing employers, Congress evidently made two findings which fostered the removal of the retroactivity provisions. First, Congress recognized that most of the employers who withdrew between April 29 and September 26, 1980 would have done so regardless of the effective date of the Act. That is, these employers had valid reasons, extrinsic to the Act, for withdrawing from their multiemployer pension plans. This finding is similar to observations made by the Pension Benefit Guaranty Corporation (PBGC), a government corporation that proposed and administers the Act. The PBGC, in granting exemptions from the withdrawal liability bond requirements that the Act imposes on certain purchasers, 29 U.S.C. § 1384(a)(1)(B), (c), has recognized that "when a sale of assets occurred before or shortly after enactment of the Multiemployer Act, it is likely that the sale was a normal business transaction undertaken without regard to the question of withdrawal liability." 47 Fed.Reg. 34,663 (1982).

Congress further recognized that many employers who withdrew during the period of retroactivity not only did not do so in anticipation of the MPPAA, but were instead surprised by its enactment. Because these employers had failed to anticipate the retroactive withdrawal provisions, they were exposed to large unexpected liabilities. This Congressional finding is also consistent with testimony given before it, specifically before a Senate Subcommittee in support of legislation similar to § 558. *See Multiemployer Plan Termination Insurance Reform Act of 1984: Hearings on S.2329 Before the Subcomm. on Labor of the Senate Comm. on Labor and Human Resources*, 98th Cong., 2d Sess. 191 (1984) (statement of Scott Petty, Vice President, Petty's Fine Foods, National Grocer's Association) ("the retroactive effect [of the MPPAA] caught many employers unaware").

The second reason for Congress imposing the MPPAA retroactively was because it believed that mass employer withdrawal would adversely effect the financial stability of pension plans and place disproportionate burdens on the remaining participating employers. It was reasonable for Congress to act to prevent some employers from taking advantage of the situation by pulling out and leaving other employers

"holding the bag." 126 Cong.Rec. 20,234 (daily ed. July 29, 1980) (statement of Sen. Matsunaga). The Report on § 558 states that the withdrawal liabilities affected "are not necessary to protect the financial integrity of multiemployer defined benefit pension plans." *Senate Rep., supra,* at 337. These facts establish that Congress had a legitimate purpose in repealing a statutory provision that had now largely served its purpose and was creating undue hardship for certain employers. Enacting § 558 plainly was a rational means of achieving this legislative purpose.

### C. *Application of the Law to the Facts of This Case*

The case before us presents that situation Congress addressed by enactment of § 558; that is, even though the employer acted before the MPPAA became law, it nonetheless faced substantial unexpected liabilities. Long Island Oil sold its business in May 1980, without provision for the purchaser to assume responsibility for any withdrawal liability. The Fund, understandably relying on the MPPAA, billed the employer for $270,655. At the same time, the new owner continued to contribute to the Fund on behalf of Long Island Oil's former employees. Thus, were the MPPAA still to govern Long Island Oil, the Fund would collect twice for the same employees. This possibility bears out Congress's twofold conclusion: first, that some employers were caught off-guard; and, second, that repeal of the retroactivity provisions will not work substantial hardship on multiemployer pension plans. Moreover, the legislative scheme lends support to this conclusion. The MPPAA facilitates the sale of assets by a withdrawing employer by relieving the seller of the obligation to pay withdrawal liability, if the purchaser agrees to assume responsibility. 29 U.S.C. § 1384(a). The Act further assists parties engaging in such a sale of assets by authorizing the PBGC to grant purchasers variances or exemptions from § 1384(a)'s requirements. *Id.* § 1384(c).

The Fund contends that if for some reason the purchaser stops paying into the plan, Long Island Oil should be secondarily liable. It argues that retroactive application of the MPPAA against Long Island Oil would provide the Fund with additional security. Examining the specific situation in this case, we are not persuaded that § 558 works an unfair hardship on the Fund. If the purchaser currently contributing to the Fund withdrew, it would owe withdrawal liability under MPPAA for any unfunded vested benefits needed to cover its employees. Further, PBGC insurance coverage for insolvent plans is now largely mandatory. *See* 29 U.S.C. § 1322a. Thus, were the Fund to encounter heavy financial seas, it would have these additional protections. Consequently, even under the worst circumstances Congress' actions are reasonable.

Even if the Fund would suffer great hardship as a result of § 558, the statute does not automatically violate the Due Process Clause. The law must be considered in context—it is an attempt to spread the costs of providing employee pension benefits among many constituencies with competing financial interests. Congress has vast discretion when adjusting and distributing the economic benefits and burdens relating to employers, plans and a government agency. It is not our task to decide who should receive what benefit, and at whose expense. Congress singled out a group of employers it believed were treated unfairly under the provisions of a previous Act. That determination seems reasonable. Congress acted to correct this perceived inequity. Again, the remedy chosen appears reasonable. Such legislation may not be stricken simply because it arguably shifts some burdens to multiemployer plans, other employers, and the PBGC; nor should a court consider itself a "superlegislature" and reevaluate the balance that Congress has struck. *See Ferguson,* 372 U.S. at 731, 83 S.Ct. at 1031 (quoting *Day-Brite Lighting, Inc. v. Missouri,* 342 U.S. 421, 423, 72 S.Ct. 405, 407, 96 L.Ed.2d 469 (1952)).

Concededly, Congress had second thoughts on the retroactivity provision it enacted in the MPPAA. Some say first thoughts are best, although Euripides believed that among mortals second thoughts are always the wisest.[2] Whether Congress' first enactment of retroactivity was wiser than its later decision to eliminate it is fortunately a matter we are not called upon to decide since whichever "would have been wiser or more practical under the circumstances is not a question of constitutional dimension." *Turner Elkhorn*, 428 U.S. at 19, 96 S.Ct. at 2894; *see also id.* at 44 (Powell, J., concurring) ("Nor does the Constitution require that legislation on economic matters be compatible with sound economics or even with normal fairness"). All that is required is that Congress approached the problem of cost-spreading rationally; and this it has done.

### D. *Analysis of Fund's Action in Reliance*

The *Turner Elkhorn* Court recognized that the justification for retroactive legislation must consider that one group may have relied on the current law. 428 U.S. at 17 & note 16, 96 S.Ct. at 2893 & note 16. Were Congress—in altering previously established rights—to ignore some significant reliance interest, we might conclude that it acted in an arbitrary and irrational fashion. But that is not the case. Rather, the Senate Report expressly noted that the Committee considered the potentially harmful effect that the proposed legislation would have on multiemployer plans such as appellant and found that the original retroactive provisions were not necessary to protect those plans. *Senate Rep., supra,* at 337.

Moreover, the Fund has not shown that it relied on the expected withdrawal liabilities affected by § 558, or that such reliance could be justified. First, as is apparent from this case, the Fund may not need to collect from Long Island Oil in order to fulfill its obligations to the employees. Second, throughout the course of this liti-

gation Congress had before it a number of proposals to eliminate the retroactive provisions of the MPPAA. *See* 128 Cong.Rec. S10969–70 (daily ed. Aug. 19, 1982) (Sen. Danforth introducing S.2860, a bill to eliminate retroactive provisions of MPPAA); 130 Cong.Rec. S1515–16 (daily ed. Feb. 22, 1984) (Sen. Nickles introducing S.2329, § 12 of which eliminated retroactive provisions of MPPAA); 130 Cong.Rec. E457–58 (daily ed. Feb. 9, 1984) (Rep. Erlenborn introducing H.4834, the No-Fault Multiemployer Plan Termination Insurance Reform Act of 1984). Third, the constitutional status of the retroactive provisions of the MPPAA was somewhat uncertain until June 18, 1984—only ten days before Congress approved § 558 of the Deficit Reduction Act, and a month before it was signed into law.

As an extension of its Reliance Claim, the Fund further argues that its interest in collecting withdrawal liability is not an "intangible one," but rather has become vested by virtue of the district court's earlier order granting its motion for summary judgment. As noted, this order filed June 29, 1984 did not become a final judgment. We need not address whether § 558 could require a multiemployer fund to return monies after the district court has granted a final decision in its favor. *See I.A.M. National Pension Fund v. Wakefield Industries, Inc.,* 612 F.Supp. 643, 12 Pens.Rep. (BNA) 923 (D.D.C. June 13, 1985) (section 558 does not apply to any liability covered by a final court judgment). *Cf. Battaglia v. General Motors Corp.,* 169 F.2d 254, 259 (2d Cir.1984), *cert. denied,* 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948) (affirming Congress's power to take away statutorily created rights to compensation, "so long as the claims ... had not ripened into final judgment"). Suffice it to say that the Fund did not derive any vested interest in such an interlocutory order. Plainly, with regard to the claim against Long Island Oil, the district court had not entered a final judgment in favor of appellant prior to the enactment of § 558.

---

**2.** Euripides, *Hippolytus,* in 8 Harvard Classics      Nine Greek Dramas 306 (C.W. Eliot ed. 1909).

E. *Sufficiency of Explanation for Congress' Actions*

The Fund also claims that § 558 is unconstitutional because Congress did not provide a sufficiently detailed explanation to support its actions. The Fund asserts that there is little indication that Congress acted on § 558 with the same level of care that it used when debating the MPPAA. The point urged is that legislation is more vulnerable when it rests on a slim reed of Congressionally expressed purported purpose. This argument misses the mark. The presumption of constitutionality that attaches to this type of economic legislation may not be overcome by an argument that attempts to quantify the legislative history.

The Constitution does not require that Congress provide a detailed justification for its actions. And, while the existence of a detailed legislative history occasionally provides valuable assistance to courts interpreting legislation, there is no power to require it. In *R.A. Gray & Co.*, for example, the Court observed "We have doubts ... that retroactive application of the MPPAA would be invalid under the Due Process Clause for lack of notice even if it was suddenly enacted by Congress without any period of deliberate consideration, as often occurs with floor amendments or 'riders' added at the last minute to pending legislation." 104 S.Ct. at 2719. In any event, it is clear that Congress fully considered the repeal of the retroactive provisions. Section 558 was debated in conference and discussed on the floor of the House, *see* 190 Cong.Rec. H7091 (daily ed. June 27, 1984) (statement of Rep. Rostenkowski) ("[Section 558] was hard fought and one of the most difficult items dealt with in conference"); *see also id.* at H7091–93 (statement of Rep. Clay) (objecting to § 558). Also, as noted earlier, Congress considered and heard testimony on a number of bills similar to § 558.

### III CONCLUSION

Accordingly, Congress's amendment of the retroactive application date of the MPPAA is supported by a rational legisla-tive purpose and, therefore, does not violate the Due Process Clause of the Fifth Amendment. The judgment of the district court is affirmed.